IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHAWN BURKE PHELPS,

  Plaintiff,

v.

STATE OF KANSAS, et al.,

  Defendants.

Case No. 23-2206-DDC-RES

### MEMORANDUM AND ORDER

  This case was filed in May 2023. Nearly two years have passed—but the parties haven't completed any discovery, and the court hasn't ruled any dispositive motions. So, what's the holdup? Plaintiff has filed not one, not two, not three, but *four* Complaints. Now, he seeks leave to amend to file a fifth complaint—his fourth amended complaint. The court decides, below, that justice requires the court to grant plaintiff leave to amend again, but just for *some* of plaintiff's proposed amendments. The court sets the scene for the current issue by providing some case history.

**I. Background**

  Plaintiff's Third Amended Complaint—3AC, for short—tells a story of small-town political corruption culminating in a conspiracy to remove plaintiff from his city government position, destroy his reputation, and harm his mental health. Doc. 65 at 2 (3AC ¶ 3). His 3AC asserts more than 20 causes of action against 15 defendants. *See generally id.* Painting with

broad brushstrokes, plaintiff alleges a conspiracy among hordes of defendants, unconstitutional searches, and a muddled expungement.[1]

### *The Conspiracy*

Plaintiff alleges a multi-year plot in retaliation for his complaints about government abuse, waste, and corruption. *Id.* at 2–3 (3AC ¶ 3). He alleges that defendants Wiehl, Padilla, Owen,[2] and others conspired together, *first*, to remove him from his city council seat. *Id.* at 15 (3AC ¶ 72). And, *later*, he alleges that they conspired with defendant Bailey[3] to charge plaintiff with crimes. *Id.* at 17 (3AC ¶ 82). As time progressed, law enforcement investigated plaintiff in what he calls "The Sham Investigation." *Id.* at 23–26 (3AC ¶¶ 114–28). Plaintiff asserts a false affidavit caused a judge to issue a warrant allowing law enforcement to seize his phone. *Id.* at 31 (3AC ¶ 156). Rumors began circulating. Plaintiff alleges that people in town heard that plaintiff's phone was seized in a child pornography investigation—which wasn't the case. *Id.* (3AC ¶ 160).

### *The Criminal Complaint*

Eventually, defendant Zentner[4] filed a criminal complaint against plaintiff, for multiple felony offenses. *Id.* at 45 (3AC ¶ 238). A judge dismissed some of the charges because of a

---

[1]   Plaintiff has named the following people and organizations as defendants: Smith County, Kansas Board of County Commissioners; City of Smith Center, Kansas; Smith County Sheriff's Office; Tabitha Owen; Bruce Lehman; Chris Bailey; Jeremy Presbrey; Travis Conaway; Bryce Wiehl; and Hope Padilla (referred to as "Municipal Defendants" in this Order). Also, he's sued defendants State of Kansas, Adam Zentner, and Cathi Holt, who the court refers to as "State Defendants."

[2]   Defendant Bryce Wiehl is the Mayor of Smith Center. Doc. 65 at 8 (3AC ¶ 37). Defendant Hope Padilla is or was the Director of the Smith Center Economic Development Board. *Id.* at 10 (3AC ¶ 50). And defendant Tabitha Owen is the Smith Center Attorney and Smith County Prosecutor. *Id.* at 3 (3AC ¶ 10).

[3]   Defendant Chris Bailey is or was the Undersheriff of Smith County. Doc. 65 at 3 (3AC ¶ 12).

[4]   Defendant Adam Zentner is or was an assistant Kansas Attorney General. Doc. 65 at 3 (3AC ¶ 9).

Fourth Amendment violation. *Id.* at 46 (3AC ¶ 240). Plaintiff then was acquitted at trial. *Id.* (3AC ¶ 241). Later, plaintiff was arrested again—this time for an allegedly false violation of a protection order. *Id.* at 48 (3AC ¶ 251). The Smith County Attorney declined to file a formal complaint, and plaintiff was released from jail thereafter. *Id.* at 50 (3AC ¶¶ 261, 263).

### *The Expungement*

Some time later, a Smith County judge issued an expungement order for all of plaintiff's charges and proceedings. *Id.* at 57 (3AC ¶ 293). Plaintiff alleges, though, that defendant Holt[5] didn't take the necessary steps to disseminate the expungement order. *Id.* Accordingly, the case remained visible to the public for more than a year. *Id.* (3AC ¶ 295). And, plaintiff emphasizes, Holt sent the entire file to Smith County's defense attorneys shortly after plaintiff filed this lawsuit. *Id.* (3AC ¶ 297).

### *Procedural History*

Plaintiff filed his original, 10-page Complaint in May 2023. Doc. 1. Shortly after that filing, he filed a First Amended Complaint—also 10 pages—as a matter of right under Fed. R. Civ. P. 15(a)(1). Doc. 4. After plaintiff served process, defendants filed Motions to Dismiss. Doc. 28; Doc. 30. Plaintiff then filed three time-extension requests to respond to defendants' motions. Doc. 35; Doc. 37; Doc. 40. Just before the extended deadline, plaintiff filed a Motion for Leave to File a 15-page Second Amended Complaint. Doc. 42. A few months later, plaintiff filed a Motion for Leave to File a 132-page 3AC. Doc. 53. The court denied plaintiff's motion because the proposed 3AC failed to comply with D. Kan. Rule 15.1 and violated Fed. R. Civ. P. 8. Doc. 60 at 1–4. Plaintiff corrected the deficiencies and filed another Motion for Leave to File

---

[5] Defendant Cathi Holt is or was the Clerk of the Smith County, Kansas District Court. Doc. 65 at 4 (3AC ¶ 18).

a 100-page 3AC. Doc. 63. The court granted his motion, Doc. 64, and that 3AC functions as the operative Complaint, now, *see* Doc. 65 (3AC).

In response to the 3AC, defendants again filed Motions to Dismiss. Doc. 77; Doc. 86. Shortly after filing his Response to the Motions to Dismiss, plaintiff moved to amend the Complaint for a fourth time—on August 13, 2024. Doc. 112. Plaintiff's proposed Fourth Amended Complaint—4AC, for short—exceeds the 3AC by nine pages—adding four new claims and a horde of new factual allegations, while abandoning five claims in their entirety. Doc. 112-2 (proposed 4AC); Doc. 112 at 5 (noting plaintiff abandoned five claims entirely, plus multiple claims against defendants Potter and Conaway); *id.* (explaining addition of two state abuse of process claims and two other claims against defendant Holt). Against that elaborate background, the court moves to act one of the case's current procedural dispute: whether the court should allow plaintiff to file the 4AC.

## II.     Motion to Amend Complaint (Doc. 112)

Fed. R. Civ. P. 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires." The decision whether to grant leave to amend is within the court's discretion. *Zenith Radio Corp. v. Hazeltine Rsch. Inc.*, 401 U.S. 321, 330 (1971); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) ("The grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." (quotation cleaned up)). "A district court may deny leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Warnick v. Cooley*, 895 F.3d 746, 755 (10th Cir. 2018) (quotation cleaned up). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason[.]" *Watson ex rel. Watson v. Beckel*,

242 F.3d 1237, 1239–40 (10th Cir. 2001) (quotation cleaned up).  Defendant must establish that amendment isn't proper.  *Newton v. City of Atchison*, No. 23-2153-JWB-ADM, 2024 WL 1344427, at *4 (D. Kan. Mar. 29, 2024) ("Practically speaking, the party opposing a motion to amend generally bears the burden to demonstrate why the amendment should not be permitted." (citing *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010)).  Defendants here challenge plaintiff's Motion to Amend based on undue delay, undue prejudice, bad faith, and futility.  The court takes up each, in turn, beginning with undue delay.

      A.      **Undue Delay**

A court may "deny leave to amend on timeliness grounds[.]"  *Warnick*, 895 F.3d at 755.  Nothing else is necessary.  *See Duncan v. Manager, Dep't of Safety*, 397 F.3d 1300, 1315 (10th Cir. 2005) ("In the Tenth Circuit, untimeliness alone is an adequate reason to refuse leave to amend.").  But the "emphasis is on the adjective"—it requires delay that's *undue*.  *Braden v. Morgan & Assocs. PC*, No. 14-2273-EFM-JPO, 2014 WL 6750065, at *2 (D. Kan. Dec. 1, 2014) (quotation cleaned up).  To that end, our Circuit "focuses primarily on the reasons for the delay."  *Minter*, 451 F.3d at 1206.  The court's denial of leave "is appropriate when the party filing the motion has no adequate explanation for the delay."  *Id.* (quotation cleaned up); *Kendall State Bank v. Archway Ins. Servs., LLC*, No. 10-CV-2617-KHV-DWJ, 2012 WL 5907388, at *2 (D. Kan. Nov. 26, 2012) ("Though courts have held that untimeliness alone can be a reason to deny leave to amend, most cases emphasize that this is true when there is no adequate explanation for the delay.").  "[C]ourts have denied leave to amend where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend."  *Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987).  The longer the delay, the more likely the court will deny leave.  *Renne v. Soldier Creek Wind LLC*, No. 21-

4032-HLT-ADM, 2022 WL 16551343, at *4 (D. Kan. Oct. 31, 2022) (citing *Minter*, 451 F.3d at 1205).

Defendants argue that plaintiff's untimeliness is reason enough for the court to deny the motion. Doc. 117 at 3–6. Plaintiff offers three explanations for his delay. He argues, *first*, that defendant Holt's actions caused a delay in finding legal counsel, so plaintiff's counsel needed time to catch up on his legal research. Doc. 122 at 3–4. *Second*, he argues that his legal research led to the conclusion that state abuse of process claims weren't time-barred, so he proposes to add them in the 4AC. *Id.* at 5. And, *last*, he asserts that defendants' Motions to Dismiss led him to investigate further and include more facts in support of his claims. *Id.* at 2–3. The court isn't impressed with the first two excuses. But, as explained below, it is persuaded—in part—by his third.

### 1.      Deprived of Legal Counsel

For starters, the court isn't persuaded that defendant Holt indirectly deprived plaintiff of legal counsel[6] for more than a year before filing the original Complaint. Plaintiff secured legal counsel and filed this lawsuit 15 months before filing the present motion. He asserts Holt deprived him of counsel before he filed the original Complaint. According to plaintiff, he lost months of time that "counsel would have otherwise had" to review documents and conduct legal research. *Id.* at 4. But surely 15 months in which plaintiff presented three earlier Amended

---

6      Plaintiff is never clear about how defendant Holt prevented him from securing legal counsel. He simply directs the court to his conclusory Motion to Strike (Doc. 114) and 3AC. Doc. 123 at 4. There, plaintiff alleges that Holt disclosed expunged documents. Doc. 114 at 2 (Motion to Strike ¶ 7). And he concludes that he "was actively seeking civil attorneys for the present case [from May 2022 to April 2023], but the misleading information in the case summary adversely affected his chances of securing legal representation[.]" Doc. 65 at 58 (3AC ¶ 300).

Complaints left ample time to research the applicable law and examine plaintiff's own files.[7] Plaintiff's explanation isn't adequate. *See Breen v. Pruter*, No. 14-CV-81-F, 2015 WL 12856463, at *3 (D. Wyo. Apr. 30, 2015) ("[T]he court cannot permit . . . a [seven months] late motion based on the attorney's failure to review discovery in a timely manner."); *cf. also Johnson v. Ogeechee Behav. Health Servs.*, No. CV605-121, 2006 WL 8435571, at *1 (S.D. Ga. Dec. 6, 2006) (finding that plaintiff's pro se status at the beginning of the case—and failure to recognize causes of action—wasn't good cause warranting amendment under Rule 16(b)).

### 2.     New Causes of Action

The extra time produced four brand-new claims for the 4AC.  The court concludes that Counts XXVI and XXVII—asserting state tort claims against defendant Holt for mistakes in handling plaintiff's expungement order—aren't proper additions.  Doc. 112-1 at 115–17 (Proposed 4AC ¶¶ 526–46).  Here's why.  Plaintiff admits that he discovered Holt's actions in June 2023.  Doc. 123 at 4.  And he amended his Complaint twice between that discovery and the present motion.  *See* Doc. 44 (2AC filed November 28, 2023); Doc. 65 (3AC filed March 20, 2024).  Plaintiff waited more than a year to include the two new claims against Holt, even when the 3AC included many of the facts on which the new claims rely.

Counts XXIV and XXV—asserting state abuse of process claims—aren't proper additions.  Doc. 112-1 at 113–15 (Proposed 4AC ¶¶ 512–25).  Plaintiff's sole explanation for their arrival is this:  He conducted more research while responding to the Motions to Dismiss and concluded that the statute of limitations wouldn't bar these abuse of process claims.  Doc. 123 at 5.  But conducting more research isn't an adequate explanation 15 months into the case.  *See*

---

[7]     In fact, plaintiff assured the court in January 2024, before filing his 3AC, that he had conducted "additional investigation and review" of his "extremely voluminous evidence[.]" Doc. 53 at 3.  This endeavor "took months to conclude given the breadth and length of the conspiracy alleged[.]" *Id.*

*Bird v. W. Valley City*, No. 12-cv-903-PMW, 2014 WL 3547829, at *2 (D. Utah July 17, 2014) (concluding plaintiff failed to adequately explain delay based on discovery of viable claim after conducting "discovery and more legal research"); *cf. also Stephens v. Ga. Dep't of Transp.*, 134 F. App'x 320, 322 (11th Cir. 2005) (concluding in Rule 16 good-cause analysis that discovering "new legal theory through additional research" wasn't good cause for delay); *Mott v. PFPC, Inc.*, No. 02-CV-1366, 2003 WL 21222678, at *2 (N.D. Tex. Mar. 28, 2003) (concluding in Rule 16 good-cause analysis that plaintiff's "only explanation for the delay—his counsel's failure to recognize a cause of action—is tantamount to no explanation at all" (quotation cleaned up)). Plaintiff's explanations here are similar. They don't justify his delay for the four claims.

### 3. New Factual Allegations

But the court is persuaded—partially—by plaintiff's explanation about the new facts. Defendants contend that most of the new factual allegations in the proposed 4AC are facts plaintiff knew or should have discovered earlier. Doc. 117 at 4 (explaining conduct occurred in 2021 or earlier and plaintiff would have known about it because of his criminal prosecution). Plaintiff argues his new factual allegations come from: reviewing affidavits attached to defendants' Motions to Dismiss, "examining and re-examining" state court criminal proceedings, diving back into his "voluminous files[,]" and conducting new independent investigations. Doc. 112 at 3–4. To be sure, any facts that plaintiff knew or should have known earlier are grounds to deny him leave. *See Renne*, 2022 WL 16551343, at *5 (denying leave to amend, in part, because plaintiff's new allegations "consist[ed] of facts he knew or should have known before" plaintiff filed the operative complaint).

Here, the new factual allegations are a mixed bag. *First*, take plaintiff's "new" allegations discovered by reviewing his own files, state court proceedings, and independent

8

investigations. He had 15 months to conduct the necessary review. These allegations are ones plaintiff should've known—and included in his Complaints—earlier. Consider *next*, though, plaintiff's allegations from the exhibits defendants' attached to their Motions to Dismiss. Defendants argue these allegations pertain to plaintiff's criminal proceeding, or conduct that occurred in 2021, so plaintiff should've known about them. Doc. 117 at 4. But plaintiff explains that he didn't know the "precise false statements" made in the attached affidavits, and he now wants to include the 4AC's refined statement of his claims. Doc. 123 at 5.[8]

It's defendants' burden to show that the delay is undue. *Newton*, 2024 WL 1344427, at *4. And while the clock is ticking loudly enough for the court to hear, defendants haven't shown plaintiff knew or should have known these precise facts—coming from the affidavits attached to defendants' Motions to Dismiss—at an earlier stage. Given the early stage of litigation—using "early" to refer to the case's procedural state—the court concludes plaintiff hasn't unduly delayed alleging precise facts from the affidavits.

So, the court must split the baby a bit. Plaintiff unduly has delayed asserting his four new causes of action. And he unduly has delayed alleging facts that he identified from review of his own records, the state criminal proceedings, and independent investigation. But it's not clear that he unduly delayed alleging more precise statements from the affidavits. So, after conducting the undue delay analysis, granting leave to amend to add factual allegations rooted in these affidavits is appropriate. The court next addresses whether the remaining factors counsel against

---

[8]   Fact-checking defendants' argument, the court discovered that plaintiff references—in general fashion only—the affidavits attached to defendants' Motions to Dismiss in his 3AC. Doc. 65 at 30–31 (3AC ¶¶ 152–55); *id.* at 75 (3AC ¶ 334); *id.* at 48–49 (3AC ¶¶ 253–54); *id.* at 51 (3AC ¶¶ 268, 269). But plaintiff's allegations about these affidavits are broad only. Plaintiff implies that the 4AC adds specific facts from the affidavits that he didn't know about earlier. Doc. 123 at 5.

9

that conclusion. Have defendants shown prejudice, bad faith, or futility that would preclude plaintiff adding these new factual allegations?

### B.      Prejudice

Prejudice is the most important factor in deciding a motion to amend. *Minter*, 451 F.3d at 1207. Courts find prejudice "when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment." *Id.* at 1208 (internal quotation marks and citation omitted). Defendants are so affected "when the amended claims arise" from a "subject matter different" from that in the complaint, "rais[ng] significant new factual issues." *Id.* Or, defendants are prejudiced when a plaintiff amends to change tactics or theories. *Hirt v. Unified Sch. Dist. No. 287*, 308 F. Supp. 3d 1157, 1168 (D. Kan. 2018) (finding no prejudice where facts supporting new claims were similar to those for existing claims and discovery was ongoing); *Welch v. Centex Home Equity Co., LLC*, 323 F. Supp. 2d 1087, 1091 (D. Kan. 2004) (finding prejudice where discovery deadline passed, new complaint more than doubled in length, and substance changed).

Defendants' prejudice allegations turn on the amount of time, money, and effort expended already. Doc. 117 at 6. But many of the cases defendants cite as support for this argument flow from different procedural postures. Take *Newton v. City of Atchison*, where our court found undue delay would cause undue prejudice to defendants. 2024 WL 1344427, at *5. There, the parties had conducted discovery, and the court had dismissed several claims already. *Id.* Or consider *Dudley v. Kansas Department of Corrections*, where our court found undue prejudice because the amendment would add defendants, require more discovery, and moot pending summary judgment motions. No. 23-3016-HLT-ADM, 2024 WL 623999, at *5 (D. Kan. Feb. 14, 2024). Again, discovery hasn't even begun in this case. *See* Doc. 34 (staying

10

discovery pending ruling on Motions to Dismiss). And the court hasn't ruled any dispositive motions. Defendants' cited cases thus prove unpersuasive for this case's procedural posture.

But wait, defendants respond. They've raised qualified immunity as a defense. Doc. 117 at 6. Qualified immunity protects defendants against *suit*, not just liability. *Id.* So, allowing plaintiff to amend is particularly prejudicial to defendants' ability to get a decision recognizing their qualified immunity. *Id.*

Qualified immunity, without question, is a defense designed to protect defendants against burdensome litigation. *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1038 (10th Cir. 2022) ("[T]he Supreme Court has explicitly recognized that qualified immunity protects government officials not only from liability, but also from the burdens of litigation itself." (emphasis omitted)). And there's a degree of "practical prejudice" defendants would face—like re-drafting their Motions to Dismiss, once again. *See Hirt*, 308 F. Supp. 3d at 1168 ("While any amendment invariably causes some practical prejudice, undue prejudice means that the amendment would work an injustice to the defendants." (quotation marks and citation omitted)). "The Court does not minimize the degree of prejudice that amendment will cause Defendants, particularly to those who raise the defense of qualified immunity." *Spiehs v. Armbrister*, No. 24-cv-4005-JAR-BGS, 2024 WL 3273286, at *6 (D. Kan. July 2, 2024).

But, because this case remains in early stages and the court intends to limit the extent of plaintiff's amendment, it concludes that any prejudice isn't undue. Plaintiff should understand, however, that as in *Spiehs*, the court "will not favorably entertain another motion for leave to amend . . . . Plaintiff has been on notice of Defendants' defenses, particularly their qualified immunity defenses, and should be prepared to proceed on this final amendment." *Id.*

### C. Bad Faith or Dilatory Motive

"Courts considering whether a motion to amend is made in bad faith will look for signs of 'dishonesty of belief, purpose, or motive' on behalf of the movant." *Id.* at *4 (quoting *Nordwald v. Brightlink Commc'ns, LLC*, No. 20-2528-JWL-GEB, 2021 WL 4399488, at *3 (D. Kan. Sept. 23, 2021)). Although this case began many months ago, the court declines to infer bad faith or dilatory motive. The case remains—still—at an early stage procedurally. Discovery is stayed pending the court's ruling on the Motions to Dismiss. Doc. 34 (Order granting defendants' Joint Motion to Stay Discovery). The parties' efforts thus far have consisted of filing Complaints and filing Motions to Dismiss in response, along with a splattering of other motions. The court accepts plaintiff's argument that he's now trying to streamline the issues. Doc. 112 at 2–3. Time will tell. But defendants haven't advanced any specific allegations of bad faith or motives for delaying the case—aside from alleging that plaintiff seeks to avoid rulings on their dismissal motions. *See generally* Doc. 117; Doc. 120. This form of generalized argument isn't persuasive—at least not now. So, the court declines to find bad faith or dilatory motive here. *See Spiehs*, 2024 WL 3273286, at *4–5 (declining to infer bad faith or dilatory motive "[g]iven the early stage in the litigation" and "liberal amendment rules," albeit in a case with a short delay, where defendant didn't allege specifically acts of bad faith).

### D. Futility

A proposed amendment is futile "'when the proposed amended complaint would be subject to dismissal for any reason.'" *Id.* at *6 (quoting *Bradshaw v. Lappin*, 484 F. App'x 217, 225 (10th Cir. 2012)). "In order to deny a motion to amend on the basis of futility, the court requires more than a possibility that the claim would not survive a motion to dismiss; it must be established that the claim would be dismissed." *W&W Steel, LLC v. BSC Steel, Inc.*, No. 11-

12

2613-RDR, 2012 WL 1828928, at *2 (D. Kan. May 18, 2012).  An amendment is futile "if it is patently obvious that the plaintiffs could not prevail on the facts alleged." *Oakes Auto, Inc. v. Mitsubishi Motors of N. Am.*, No. 24-2175-TC-GEB, 2025 WL 623886, at *3 (D. Kan. Feb. 26, 2025) (quotation cleaned up).  A futility analysis considers "the proposed amendments, not claims already in the case." *W&W Steel*, 2012 WL 1828928, at *1 (emphasis omitted). "Defendants as the parties opposing amendment also bear the burden of showing the amendments are futile." *Oakes Auto*, 2025 WL 623886, at *3.

Plaintiff incorporates his new factual allegations by reference into multiple claims, against multiple defendants.[9]  Where plaintiff's new factual allegations would remain in the case for at least one claim and at least one defendant, the amendment isn't futile.  Both sets of defendants present some futility arguments solely by incorporating their pending Motions to Dismiss by reference.  *See* Doc. 117 at 7; Doc. 120 at 6.  And defendants provide short analyses of a few other arguments in their Motion to Amend briefing.  But these arguments intertwine considerably with the merits of defendants' Motions to Dismiss.  The court, in its discretion, concludes that a fulsome analysis of defendants' defenses should wait for a future motion to dismiss that incorporates the new factual allegations more clearly.  *See Hollis v. Acoustic Sounds, Inc.*, No. 13-1083-JWL, 2013 WL 4768076, at *2 (D. Kan. Sept. 4, 2013) (concluding futility was "more appropriately addressed at a later stage" because plaintiff's proposed

---

[9] As best the court can tell—and it's not a particularly easy translation—plaintiff's new factual allegations based on the warrant affidavits support these counts: Count II (search and seizure July 1, 2020); Count IV (malicious prosecution May 5, 2021); Count VIII (false arrest July 1–9, 2021); Count IX (search and seizure August 31, 2021); and Count XXII (conspiracy). *See* Doc. 123 at 5 (explaining "*precise false statements*" from the affidavits and listing where they are included in the 4AC (emphasis in original)); Doc. 112 at 4 (listing "additional factual detail" and explaining that it "is relevant to both the conspiracy and prosecutorial immunity issues").  It's likely that these new allegations support claims in other counts, though the court won't attempt to guess how.

13

amendments didn't appear "clearly frivolous" such that they wouldn't survive a motion to dismiss).

The court reaches this conclusion for four reasons: *First*, the new allegations could affect several of plaintiff's claims and defendants' asserted defenses, including those not addressed explicitly in the parties' Motion to Amend briefing. If any of those claims would survive, then the amendment isn't futile. And defendants haven't directed the court to the salience of the new facts on their defenses. Motion to dismiss briefing after plaintiff files the 4AC would help. *Second*, as the court just alluded, defendants will have another opportunity to raise these arguments—and clarify the effect of the new facts—after plaintiff files the 4AC. *Third*, as addressed earlier, defendants will face minimal prejudice from the amendments. *See Somrak v. Kroger Co.*, No. 17-2480-CM-GEB, 2018 WL 1726346, at *5 (D. Kan. Apr. 10, 2018) (permitting proposed amendment "where Defendant may later challenge the claim, and particularly in light of the lack of prejudice to Defendant"). And, *fourth*, Rule 15(a)(2)'s "liberal amendment policy" directs that courts should give leave freely. *Johnston v. Prairie View, Inc.*, No. 19-2041-CM-GEB, 2019 WL 5291174, at *4 (D. Kan. Oct. 18, 2019); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Taken together, the court concludes it's best to resolve the questions defendants raise on their merits. After all, Rule 15(a) is designed to "provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter*, 451 F.3d at 1204 (quotation cleaned up).[10]

---

[10] The court can resolve one procedural nicety here: The municipal defendants argue that plaintiff tries to add a § 1983 conspiracy claim that he earlier dropped from the 3AC. Doc. 117 at 7. But plaintiff's § 1983 conspiracy claim isn't new, as he emphasizes. Doc. 123 at 3. His proposed 4AC clerically converts a § 1985 conspiracy to a § 1983 conspiracy. Doc. 112-1 at 110 (Proposed 4AC Count XXII). Except for the 3AC, all plaintiff's prior Complaints raised a § 1983 conspiracy, not a § 1985 conspiracy. *See* Doc. 123 at 3 (citing Doc. 1 at 8; Doc. 4 at 8; Doc. 44 at 8; Doc. 53-1 at 141). In short, plaintiff merely corrects a clerical error. The municipal defendants haven't shown it's futile for him to do so. The 4AC will permit plaintiff to correct this error.

14

At bottom, it's not "patently obvious" that plaintiff's claims which rely on the new factual allegations are doomed. *Oakes Auto*, 2025 WL 623886, at *3. Thus, it's better to resolve the remaining questions on the merits of a fully briefed motion to dismiss.

One final consideration: whether plaintiff's 4AC complies with Rule 8.

### E. Rule 8 Arguments

The municipal defendants argue that plaintiff's 4AC violates Fed. R. Civ. P. 8—which requires a "short and plain statement of the claim[s]" asserted. Doc. 117 at 1–3; Fed. R. Civ. P. 8(a)(2). As defendants point out, "[d]espite abandoning several claims, the proposed 4AC is 109 pages and contains 543 numbered paragraphs." Doc. 117 at 1. So, they argue, plaintiff's "repetitive, irrelevant, and self-contradictory allegations" warrant dismissal. *Id.* Plaintiff responds, arguing that he asserts a conspiracy, which is complex and requires more detailed factual allegations. Doc. 123 at 2 (first citing *Bledsoe v. Jefferson Cnty., Kan.*, 275 F. Supp. 3d 1240, 1261 (D. Kan. Aug. 4, 2017); and then citing *Barnes v. A. Sind & Assocs.*, 32 F.R.D. 39, 40 (D. Md. 1963)). So, does Rule 8 provide a basis for the court to deny plaintiff an opportunity to amend here?

Under Rule 8, plaintiffs must "state their claims intelligibly so as to inform the defendants of the legal claims being asserted." *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007). Complaints run afoul of Rule 8, however, when they're "'written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs[.]'" *Id.* (quoting *McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996)). But length alone isn't sufficient to violate Rule 8. *In re Roberts*, No. 20-3182, 2021 WL 4438744, at *3 (10th Cir. Sept. 28, 2021) ("While the length of a complaint can be problematic, length alone does not support dismissing a complaint with prejudice under Rule

15

8."); *Spiehs*, 2024 WL 3273286, at *7 ("Plaintiff is correct that lengthy complaints, standing alone, do not violate Rule 8[.]"). When complaints are "'windy but understandable[,]'" the court shouldn't dismiss the case and "'insist[] that the parties perfect their pleadings, . . . [but] should bypass the dross and get on with the case.'" *In re Roberts*, 2021 WL 4438744, at *3 (quoting *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)).

Plaintiff's complaint is long, but understandable. And he's clarified which claims he asserts against which defendants. The court is tempted to borrow the approach that our court took in another case, *Spiehs*, 2024 WL 3273286, at *7–8. There, Judge Robinson required plaintiff to revise his proposed 105-page complaint, reminding plaintiff of the value of "brevity, keeping in mind that the purpose of a complaint is to put Defendants on notice of the claims raised against them." *Id.* at *7. Plaintiff here might benefit from the same reminder. Perhaps defendants would benefit as well. This case soon will celebrate its second anniversary, and the parties haven't moved beyond the pleading stage. Enough is enough. The court thus declines to send plaintiff back to the drafting table, fearing what an additional helping of pleading might mean for the case's timeline. Still, a distinct but related reminder will serve everyone well— including the court. Everyone needs to get on with it.

### III.  Conclusion

This is plaintiff's *fifth* bite at the apple, now 22 months into the litigation. The court cautions plaintiff against trying to invoke the liberal language of Rule 15(a)(2) to postpone progress in this case again and thereby moot pending, fully briefed motions to dismiss. But for now, Rule 15's forgiving language leads the court to grant—however reluctantly—plaintiff's latest Motion to Amend (Doc. 112).

The court directs plaintiff to file a 4AC with amendments that solely: (1) include new allegations from the exhibits attached to defendants' Motions to Dismiss; (2) correct clerical errors, including the mistyped § 1983 conspiracy; and (3) omit abandoned claims and defendants. The court gives plaintiff seven days to complete this task. Absent truly extraordinary circumstances, the court won't entertain requests for extension of time.

**IT IS THEREFORE ORDERED THAT** plaintiff's Motion to Amend (Doc. 112) is granted in part and denied in part. Plaintiff is granted seven days to file a revised fourth amended complaint that complies with this Order.

**IT IS SO ORDERED.**

**Dated this 7th day of March, 2025, at Kansas City, Kansas.**

> s/ Daniel D. Crabtree
> **Daniel D. Crabtree**
> **United States District Judge**